IN THE UNITED STATES DISTRICT COURT, IN AND FOR
THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| AMERICAN CLAIMS MANAGEMENT, INC., <br><br>      Plaintiff and Counterclaim Defendant, <br><br>v. <br><br>ALLIED WORLD SURPLUS LINES INSURANCE COMPANY (fka Darwin Select Insurance Company), <br><br>      Defendant and Counterclaimant. <br>_____/ | Misc. Action. 6:19-MC-00025-CEM-GJK <br><br>Underlying Case Pending in the United States District Court for the Southern District of California <br><br>Case No.: 18-CV-0925 JLS (MSB) <br><br>ORAL ARGUMENT REQUESTED |

**REPLY IN SUPPORT OF MARK E. KING'S MOTION TO QUASH NON-PARTY DEPOSITION SUBPOENA AND/OR MOTION FOR PROTECTIVE ORDER**

In accordance with the Court's order dated May 24, 2019 (Dkt. 20), non-party Mark E. King ("Mr. King") respectfully submits this Reply addressing the inaccuracies made in Allied World Surplus Lines Insurance Company's ("Allied World") opposition dated May 1, 2019. Dkt. 12. Allied World's claims about Mr. King's role and material involvement in the underlying matter are false. Even if there were any truth to Allied World's claims (there is not), they are wholly immaterial because this case is not about Mr. King—it is about Allied World's breach of its duties to its insured, American Claims Management, Inc. ("ACM"). Simply put, Mr. King's actions as counsel on behalf of ACM and ACM's parent company, Brown & Brown, have no probative value in the case, and any relevant, non-duplicative information Mr. King could possibly provide at deposition would unquestionably be privileged. Mr. King's motion to quash the subpoena and/or for a protective order should be granted, and Mr. King should be awarded his reasonable attorneys' fees and costs under Rule 45(d)(1) and Rule 37(a)(5).

**I.   ALLIED WORLD MISREPRESENTS MR. KING'S INVOLVEMENT IN THIS CASE**

Allied World attempts to paint a picture of Mr. King as "in charge" of ACM's defense in the underlying lawsuit, and a key figure in dealing with the QBE claim. This is not true. ACM tendered the QBE claim to Allied World, ACM's insurer, well before Brown & Brown had even acquired Arrowhead General Insurance Agency, Inc. ("Arrowhead") or Arrowhead's subsidiary, ACM. *See* Declaration or Mark King ("King Decl.") ¶¶ 8–9. Further, the relevant insurance policy provides that it is Allied World, and not ACM, that "has the right and duty to defend any Claim . . . under the Policy."[1] *See* Supplemental Declaration of William V. O'Connor ("O'Connor Sup. Decl."), Ex. I. ACM cannot unreasonably withhold its consent to settle, but Allied World has the express "right to make investigations and conduct negotiations, and . . . enter into such settlement of any Claim as [Allied World] deems appropriate." *See id.* Accordingly, once ACM made its claim under the policy, Allied World was "in charge" of the claim as Allied World alone had the duty to defend ACM—not ACM, and certainly not Brown & Brown. Allied World's central theme that Mr. King had authority to settle the QBE claim on ACM's behalf is therefore factually inaccurate, legally wrong, and should not be credited.

Allied World's repeated claims that Mr. King was controlling ACM's conduct or otherwise involved in the day-to-day handling of the QBE dispute are also false. Allied World concedes that ACM identified Robert Schraner (Arrowhead's former general counsel) and Robert Bowling (an in-house attorney at Brown & Brown) in its Rule 26 disclosures as having responsibility for the day-to-day handling of the litigation, not Mr. King. Opp. at 4-5; *see* Declaration of William V. O'Connor ("O'Connor Decl."), Ex. F. This has since been confirmed

---

[1] This duty is also established under California law, and is non-delegable. *See, e.g., Travelers v. Lesher*, 187 Cal. App. 3d 169, 188 (1986) ("[A]n insurer's duty to defend includes a duty to negotiate and evaluate settlement offers."), *disapproved of on other grounds in Buss v. Sup. Ct.*, 16 Cal. 4th 35 (1997).

by multiple witnesses in this case, and cannot reasonably be disputed. O'Connor Sup. Decl. Ex. J ("Q. Did you work with [Mark King] with respect to the arbitration brought by QBE? A. No."); *id.* Ex. K ("I believe [Mr. Bowling] was the primary person supervising the matter for Brown & Brown, ACM."). [2]

Allied World cites to a March 11, 2014 email from Mr. Schraner as supposed proof that Mr. King "was monitoring and controlling the handling of this claim," but Mr. Schraner's email reflects nothing of the sort. *See* Opp. at 5. At most, it suggests that Mr. Schraner informed Mr. King of a proposed pre-litigation strategy, consistent with Mr. King's supervisory role as the head of Brown & Brown's litigation department. *See* King Decl. ¶¶ 3–4. Mr. King is not even copied on the email chain.[3] *See* Declaration of Guyon Knight ("Knight Decl."), Ex. J. Any claim that this establishes Mr. King's day-to-day involvement in the QBE dispute is absurd.

Allied World's suggestion that Mr. King later "took over the claim from Schraner" is also wrong. Opp. at 6. Allied World's only proffered support for this misstatement is a March 24, 2015 email in which Mr. Schraner suggests that after his last day at Arrowhead, Allied World's contact should be with Mr. King. Knight Decl. ¶ 4, Ex. B. But as Allied World well knows, Mr. Bowling assumed day-to-day responsibilities for the QBE matter after Mr. Schraner left, not Mr. King.[4] *See* O'Connor Sup. Decl. Exs. J, K. Further, it cannot be disputed any communications from Mr. Bowling to Mr. King regarding the underlying matter would be entirely privileged.

---

[2] Indeed, Allied World's principal witness, claims adjuster Brett Arruda, does not mention Mr. King's name even once in more than 300 pages of deposition testimony. *See* O'Connor Sup. Decl. ¶ 6. Nor is Mr. King mentioned anywhere in the deposition transcript of Kimberly Ashmore, Allied World's coverage/monitoring counsel. *See id.* ¶ 7.

[3] Allied World's claims that Mr. King was "controlling the handling [of the QBE] claim" is also false. Mr. King is not a "claims handler," and does not "adjust" claims. *See* King Decl. ¶ 4.

[4] During a recent meet and confer effort, Allied World's counsel Guyon Knight again acknowledged this fact, stating: "I understand that Mr. Bowling at Brown and Brown was

While Allied World contends that Mr. King subsequently took "an active role in directing communications with QBE" (Opp. at 6), and suggests that Mr. King somehow put Brown & Brown's business interests ahead of Allied World's proper handling of the QBE claim, Allied World fails to identify any of these supposed communications—even though the parties have produced more than 39,000 documents in this matter, and Allied World has subpoenaed QBE for information three times.[5] *See* O'Connor Sup. Decl. ¶ 8, Exs. N–P. Mr. King's high-level observation in the April 24, 2015 correspondence with Mr. Alan Jampol that Mr. Jampol's plan for ACM to take the offensive against QBE was not well thought out because it "does not protect ACM against the multi-million dollar lawsuit" by QBE, and "guarantees that B&B's other entities who deal with QBE will be affected" merely reflects Mr. King carrying out his role in acting as counsel to protect the best interests of ACM and its parent Brown & Brown.[6] Knight Decl. Ex. C. Nor does Mr. King's later comment to Mr. Jampol that ACM is entitled to communicate directly with QBE—with whom ACM had a business relationship—without Allied World's approval (*id.*, Ex. E), or Mr. King's reference to a possible phone call with QBE's in-house counsel (*id.*, Ex. F), establish that Mr. King, "and [Mr. King] alone" was making decisions

---

managing the underlying disputes on behalf of ACM for a good period of time." *See* O'Connor Sup. Decl. ¶ 5, Ex. L.

[5] Allied World contends that Peter Klee's deposition testimony establishes that Mr. King "remains in control of ACM's conduct," but Allied World knows full well that Mr. Klee has no personal knowledge of Mr. King's day-to-day activities. Opp. at 9. In any event, any communications between Mr. King and QBE are not relevant to this dispute because, as set forth above, it was Allied World's duty as ACM's insurer to settle QBE's claim against ACM—not Brown & Brown's (and certainly not Mr. King's). *See* O'Connor Sup. Decl. Ex. I.

[6] Allied World also cites to a lone email sent by ACM's CEO Scott Marshall indicating that an early response to QBE should be "Mark King and AWAC's call" as the insurance deductible being paid by ACM on the claim "will be eaten up pretty quickly," but this in no way shows that Mr. King "was in charge of this claim." Opp. at 7; Knight Decl. Ex. D. Mr. Knight attempts to connect dots that cannot be connected.

for ACM. Opp. at 8. Again, it was Allied World's sole duty to defend and settle the QBE claim, not Brown & Brown's or ACM's.

Finally, Allied World's preposterous claim that Mr. King "is the ***only*** witness with knowledge of the facts that led ACM to presume that Jampol was not representing" ACM's interests is clearly wrong. Opp. at 9. ACM's allegations concerning Allied World's control of Mr. Jampol are not based on Mr. King's knowledge, and Mr. King's reasoning for firing Mr. Jampol is clearly privileged.[7] *See* O'Connor Supp. Decl. Ex. I. In any event, Allied World has not yet deposed Mr. Schraner or Mr. Bowling, even though witnesses have repeatedly confirmed that they shouldered the day-to-day responsibility for monitoring the litigation. *See* O'Connor Sup. Decl. Exs. J, K. Allied World is also seeking 30(b)(6) testimony from ACM on a wide variety of topics, including "Jampol Zimet's retention and representation in connection with" the litigation. *See* O'Connor Decl., Ex. G. Mr. King is not the only source of information on this topic, and any information he could provide is privileged.

## II.   ALLIED WORLD FAILS TO MEET ITS BURDEN TO SHOW THAT DEPOSING ACM'S COUNSEL IS APPROPRIATE UNDER THE WIDELY-ACCEPTED *SHELTON* TEST

Even if any of Allied World's misrepresentations were true, Allied World still cannot meet its burden to show that a deposition of ACM's counsel is warranted under the *Shelton* test. To do so Allied World would need to show that "(1) no other means exist to obtain the information [other] than to depose opposing counsel; (2) the information sought is relevant and non privileged; and (3) the information is crucial to the preparation of the case." *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986). Allied World fails to meet this high bar, and the subpoena must be quashed and/or a protective order entered.

---

[7] In addition to being privileged, Mr. King's reasoning for firing Mr. Jampol is totally irrelevant because Allied World itself came to the conclusion that Mr. Jampol had committed malpractice, and sought to preserve a malpractice claim against him. *See* O'Connor Sup. ¶ 7, Decl. Ex. M. There is nothing to be gained by a deposition of Mr. King on this point.

*First*, Allied World identifies only two instances of information that can supposedly only be obtained by Mr. King: (1) information "show[ing] that Jampol was representing Allied World's interests rather than ACM's;" and (2) information regarding "all of the people at QBE [Mr. King] spoke with about his claim." Opp. at 18. Again, ACM has never alleged that Mr. Jampol's failure to represent ACM's interests depends on facts known by Mr. King. *See* Supp. O'Connor Decl., Ex. I. To the extent Mr. King had any interactions with Mr. Jampol, they are reflected in the voluminous documentary evidence produced in this matter, and were examined during Allied World's deposition of Mr. Jampol on May 15, 2019. *See* O'Connor Sup. Decl. ¶¶ 9–10, Ex. Q.

In any event, Allied World cannot contend that Mr. King is the ***only*** source for this supposed information when Allied world has not yet deposed Mr. Schraner and Mr. Bowling—both of whom were actually involved in the day-to-day monitoring of the QBE litigation. *See* O'Connor Sup. Decl. ¶ 11. Allied World's claim that information regarding Mr. King's contacts with QBE can only be obtained from Mr. King is similarly defective. Opp. at 18. Allied World ***admits*** that it could subpoena QBE regarding its communications with Mr. King, if necessary.[8] *See* Opp. at 3. Further, Mr. King's contacts with QBE have no probative value on the dispositive issue in the case—Allied World's failure to act in best interests of its insured, ACM. Allied World thus cannot demonstrate that "no other means" exist to obtain the information it supposedly seeks, and the subpoena must be quashed. *See Shelton*, 805 F.2d at 1327.

*Second*, even if no other means existed to obtain this information, Allied World fails to make any showing that Mr. King could provide relevant and non-privileged testimony on these

---

[8] QBE was a party to the underlying matter, it would thus be more fitting to exhaust that source before deposing ACM's litigation counsel.

topics.[9] While Allied World vaguely refers to "[t]estimony about communications between ACM and QBE," not all communications between ACM and QBE are relevant to the dispute, as both ACM and Brown & Brown have ongoing business relationships with QBE. Opp. at 18. Further, to the extent Allied World references a variety of supposed actions taken by Mr. King regarding Mr. Jampol, Allied World makes no argument as to what **non-privileged** information Mr. King could provide, or how such information would be remotely relevant to Allied World's duties to ACM. It is undisputed that Mr. King was acting as Brown & Brown's counsel in the underlying matter. Allied World cannot satisfy the second prong.

*Finally*, Allied World makes no showing that any information supposedly unique to Mr. King, that is also relevant and non-privileged, is "crucial to the preparation of this case." *Shelton*, 805 F.2d at 1327; *see* Opp. at 19. To date, the parties have exchanged more than 39,000 documents in this matter, not including some 1,800 documents produced by Mr. Jampol. *See* O'Connor Sup. Decl. ¶ 10. Both parties have deposed Mr. Jampol, and Allied World has not yet deposed Messrs. Schraner and Bowling, who were involved in the day-to-day monitoring of the underlying litigation. *See id.* ¶¶ 9, 11. Under these circumstances, Allied World cannot meet its burden to show that it satisfies the *Shelton* test and that its needs "outweigh the dangers of deposing [ACM's] attorney." *See Finster v. U.S. Bank Nat'l Ass'n*, 2016 WL 11110214 at *2 (M.D. Fla. Oct. 31, 2016).

### III.    ALLIED WORLD FAILS TO IDENTIFY ANY VALID GROUNDS FOR DEPOSING MR. KING

Allied World attempts to distract from the high bar it faces in seeking to depose ACM's current litigation counsel—something no party has attempted in this litigation to date—by

---

[9] Allied World attempts to muddy the analysis and redefine this prong as an inquiry into whether Mr. King has any potentially relevant, non-privileged information **at all**, but the *Shelton* test is **conjunctive**, not **disjunctive** (i.e., Allied World must show that the information for which "no other means exist to obtain the information [other] than to depose opposing counsel" is also relevant, non-privileged, and crucial to the case). *See Shelton*, 805 F.2d at 1327.

arguing that *Shelton* does not apply because Mr. King recently sought *pro hac vice* admission to the Southern District, and questioning him would not expose ACM's litigation strategy.[10] Not so. Mr. King's *pro hac vice* status is not dispositive as to Mr. King's status as litigation counsel to ACM—a subsidiary of Brown & Brown.[11] *See* King Decl. ¶¶ 8, 12. Further, the supposedly non-privileged facts Allied World seeks to elicit, including Mr. King's alleged handling of the case, the decision to fire Jampol, and the April 2017 arbitration, are all inextricably intertwined with the present dispute, and would all necessarily touch upon privileged matters or ACM's litigation strategy. *See* O'Connor Sup. Decl. Ex. I. Again, unlike all other counsel being deposed in this case, Mr. King had no involvement in the day-to-day handling of the underlying litigation, and had no duty to settle the case on behalf of ACM. *See* Mot. at 7–8. That was solely Allied World's responsibility.

Allied World's reliance on *Travelers v. Richard McKenzie & Sons*, 2018 WL 3391267 (M.D. Fla. Mar. 14, 2018) is misplaced. Opp. at 17. Judge Tuite ultimately permitted limited depositions of two active litigation counsel in that matter (one for each separately represented party), but the Court's determination was expressly limited by "the circumstances in this case," namely that it was undisputed that the subpoenaed counsel negotiated the *Coblentz* agreement at issue, and therefore were uniquely positioned to speak to the requirement that "the settlement

---

[10] Allied World's claim that ACM has failed "to inform this Court of the current state of the relevant law in this district" (Opp. at 15), is false. Allied World's cited authority itself expressly applies the principles of "the Eighth Circuit's seminal decision in Shelton," which is widely applied "in this District and elsewhere" to protect against unnecessary and harassing depositions of counsel. *Travelers Indem. Co. of Connecticut v. Richard McKenzie & Sons, Inc.*, 2018 WL 3391267, at *7 (M.D. Fla. Mar. 14, 2018).

[11] Nor does Mr. King's *pro hac vice* status in the Southern District present "exceptional circumstances" warranting a transfer of the motion. *See Inter-Am. Dev. Bank v. Venti S.A.*, 2016 WL 5786982, at *2 (S.D. Fla. Oct. 4, 2016) ("The prime concern should be avoiding burdens on local nonparties subject to subpoenas, and it should not be assumed that the issuing court is in a superior position to resolve subpoena–related motions.") (quoting Advisory Committee notes). Mr. King works and resides in Florida, and this dispute is properly before this Court.

was objectively reasonable and made in good faith," and that counsel could do so without revealing protected litigation strategy.[12] *Id.* at *2, *7. As set forth above, Allied World fails to identify any similarly unique information that can only be provided by Mr. King in this action.[13] Further, Allied World omits that the motion in *Travelers* was **granted in part** because "deposing two attorneys from the same firm regarding the same matter is duplicative and unnecessary." *Id.* at *8. The same is true here. Even if it were permissible to depose Mr. King, Allied World has not yet deposed Messrs. Schraner and Bowling, who had day-to-day responsibility for overseeing the underlying litigation. Mr. King's deposition is completely unnecessary and must be quashed for this reason as well.

IV.     **MR. KING IS ENTITLED TO REASONABLE ATTORNEYS' FEES INCURRED IN OPPOSING ALLIED WORLD'S UNREASONABLE AND HARASSING SUBPOENA**

Allied World and its attorneys have a duty to "take reasonable steps to avoid imposing undue burden or expense." *See* Fed. R. Civ. P. 45(d)(1); *see also* id. at 26(c)(3). Allied World still refuses to specify what information it is seeking from Mr. King and why that information cannot be obtained from others. *See* O'Connor Decl. ¶ 2. There is no legitimate basis for seeking to depose ACM's counsel in this matter, and Mr. King should be awarded his reasonable attorneys' fees. *Narcoossee Acquisitions, LLC v. Kohl's Dep't Stores, Inc.*, 2014 WL 4279073, at *3 (M.D. Fla. Aug. 28, 2014); *Utopia Provider Sys., Inc.*, 2008 WL 11395484, at *7-8.

V.     **ALLIED WORLD'S REQUEST FOR ATTORNEYS' FEES SHOULD BE DENIED**

---

[12] "In a traditional *Coblentz* agreement, the insured enters into a consent judgment establishing its liability and fixing damages; and assigns any cause of action it has against its insurer to the claimant." *Travelers*, 2018 WL 3391267 at *2. Depositions of counsel in such cases are "not uncommon." *Id.* at *6.

[13] Notably—unlike Mr. King—the subpoenaed counsel in *Travelers* were also identified in Rule 26 initial disclosures. Messrs. Schraner and Bowling, were both listed as part of ACM's Rule 26 disclosures, but Mr. King was not.

While Allied World half-heartedly argues that it should be awarded its attorneys' fees incurred in responding to this motion, Rule 37 fees are not permissible if Mr. King's motion was "substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(B); *see Neumont v. Monroe Cty., Fla.*, 225 F.R.D. 266, 268 (S.D. Fla. 2004) ("[R]esistance to discovery is 'substantially justified' if 'there is a genuine dispute.'") (quoting *Pierce v. Underwood*, 487 U.S. 552 (1988)). Mr. King's motion raises a genuine dispute, as evidenced by Allied World's lengthy submission in opposition, and Allied World's request should be denied.

## VI. CONCLUSION

For the reasons set forth above, Mr. King respectfully requests that the Court quash the subpoena and/or enter a protective order and award the reasonable attorneys' fees and costs incurred in filing this motion and opposing the subpoena.

Dated this 31st day of May, 2019.

Respectfully Submitted,

*/s/ Lawrence P. Ingram*
Lawrence P. Ingram FBN: 855510
Melissa B. Murphy FBN: 70071
Freeborn & Peters LLP
201 North Franklin Street, Suite 3550
Tampa, FL 33602
Telephone: (813) 488-2920
Email:  lingram@freeborn.com
            mmurphy@freeborn.com
            pgeer@freeborn.com
            mbennett@freeborn.com
*Counsel for Non-Party Mark E. King*

## CERTIFICATE OF SERVICE

I hereby certify that on May 31, 2019, the foregoing was filed using the Court's CM/ECF system which will send electronic notice of filing to all counsel of record.

*/s/ Lawrence P. Ingram*