**EXHIBIT M**

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SAN DIEGO DIVISION

- - - - - - - - - - - - - - -X

| | |
|---|---|
| AMERICAN CLAIMS | : |
| MANAGEMENT, INC., | : |
|    Plaintiff and, | : Case No. |
|    Counterclaim-Defendant, | : 3:18-cv-00925-JLS-MSB |
| vs. | : |
| ALLIED WORLD SURPLUS | : |
| LINES INSURANCE COMPANY | : |
| (f/k/a Darwin Select | : |
| Insurance Company), | : |
|    Defendant and | : |
|    Counterclaimant. | : |

- - - - - - - - - - - - - - -X

Videotaped Deposition of KIMBERLY ASHMORE

Washington, D.C.

Friday, April 26, 2019

9:11 a.m.

Reported by: Dana C. Ryan, RPR, CRR

1
2
3
4
5                                           April 26, 2019
6                                             9:11 a.m.
7
8
9
10        Videotaped Deposition of KIMBERLY ASHMORE,
11    held at the law offices of Cooley LLP, 1299
12    Pennsylvania Avenue, Northwest, Washington, D.C.,
13    before Dana C. Ryan, Registered Professional
14    Reporter, Certified Realtime Reporter and Notary
15    Public in and for the District of Columbia.
16
17
18
19
20
21
22
23
24
25

1             A P P E A R A N C E S

2

3    ON BEHALF OF THE PLAINTIFF AND

4    COUNTERCLAIM-DEFENDANT:

5       DANE R. VORIS, Esquire

6       Cooley LLP

7       500 Boylston Street

8       14th Floor

9       Boston, Massachusetts 02116

10      Telephone: (617) 937-2300

11      Email: dvoris@cooley.com

12

13            - and -

14

15      GREG HOFFNAGLE, Esquire

16      RACHEL F. KATZ, Esquire

17      Cooley LLP

18      55 Hudson Yards

19      New York, New York 10001

20      Telephone: (212) 479-6000

21      Email: ghoffnagle@cooley.com

22      Email: rkatz@cooley.com

23

24

25

1   A P P E A R A N C E S   C O N T I N U E D

2

3       ON BEHALF OF THE DEFENDANT AND

4       COUNTERCLAIMANT:

5           GUYON H. KNIGHT, Esquire

6           Quinn Emanuel Urquhart & Sullivan, LLP

7           51 Madison Avenue

8           22nd Floor

9           New York, New York 10010

10          Telephone: (212) 849-7000

11          Email: guyonknight@quinnemanuel.com

12

13

14      Also present:

15          Charlie Widner, Videographer

16

17

18

19

20

21

22

23

24

25

Page

1 this letter?

2     A    I think so.  I may not have been in the

3 office and so Rick signed it.  I don't -- I don't

4 recall.

5     Q    Okay.  But within this letter, Wiley

6 Rein is telling ACM that it needs to take

7 necessary steps to preserve any claims against

8 Mr. Jampol; correct?

9     A    ==Yes, it came to our attention that ACM==

10 ==potentially could have a statue of limitations==

11 ==problem unless it secured a tolling agreement from==

12 ==Mr. Jampol.==  And, so, this is our letter following

13 up on a call that we had, it looks like, and an

14 email that we had sent to Ms. Lawson about ACM

15 securing a tolling agreement with Mr. Jampol.

16     Q    How did it come to your attention that

17 ACM potentially could have a statute of

18 limitations problem?

19         MR. KNIGHT:  And, again, testify to the

20 extent you can based on nonprivileged information.

21         THE WITNESS:  As I told Ms. Lawson, in

22 reviewing documents related to the claim, there

23 was an email, I believe, that directed Mr. Jampol

24 to stop acting on ACM's behalf dated June 29th,

25 2015.  And, so, there could be an argument that

1    the one-year statute of limitation in California

2    would have run as of June 29th, 2016.

3         BY MR. VORIS:

4         Q    What kind of claim were you concerned

5    about against Mr. Jampol?

6              MR. KNIGHT:  Same objection.

7              Testify based on nonprivileged

8    information.

9              THE WITNESS:  Any claim that ACM might

10   have had with respect to Mr. Jampol's services --

11   legal services that are provided to ACM in

12   connection with this matter.

13        BY MR. VORIS:

14        Q    Did you have any concerns about

15   specific claims that ACM -- ACM should preserve

16   against Mr. Jampol?

17             MR. KNIGHT:  Again, testify to

18   nonprivileged information, not to your private,

19   privileged thoughts.

20             THE WITNESS:  Ms. Lawson, during prior

21   calls, was very clear that ACM had claims arising

22   out of Mr. Jampol's services.  That was her

23   opinion.  It had come to my attention that nothing

24   had been done, and so I was communicating that to

25   Ms. Lawson and asking her -- or telling her that